IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **THOMAS J. CAPANO,**<br>　　Petitioner,<br><br>　　　　v.<br><br>**THOMAS CARROLL**, Warden, *et al.,*<br>　　Respondent. | :<br>:<br>:<br>:  Civil Action No. 06-58 ***<br>:<br>:<br>: |

### PETITIONER'S REPLY BRIEF
### IN SUPPORT OF PETITION FOR HABEAS CORPUS

JOSEPH M. BERNSTEIN (DE Bar #780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbernstein@embarqmail.com
Attorney for Petitioner

Dated: September 14, 2007

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **TABLE OF AUTHORITIES** | **I** |

**ARGUMENT**

I.  THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT, AS ESTABLISHED IN *BECK v. ALABAMA*, 447 U.S. 625 (1980), WHEN IT REFUSED THE DEFENSE'S REQUEST TO INSTRUCT THE JURY ON LESSER INCLUDED OFFENSES TO THE INDICTED CHARGE OF FIRST DEGREE MURDER ..... 1

II. THE ADMISSION OF FAHEY'S HEARSAY STATEMENTS TO HER PSYCHOTHERAPISTS AND HER FRIENDS VIOLATED CAPANO'S RIGHTS UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION ..... 6

III. THE PROSECUTION'S CROSS-EXAMINATION OF CAPANO CONCERNING POST-ARREST SILENCE VIOLATED HIS RIGHTS UNDER THE FIFTH AMENDMENT AND DEPRIVED HIM OF A FUNDAMENTALLY FAIR TRIAL ..... 7

**CONCLUSION** ..... 8

**CERTIFICATE OF SERVICE** ..... 9

# TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE**

*Beck v. Alabama*, 447 U.S. 625 (1980)        1,2,5

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)        6

*Capano v. State*, 781 A.2d 556 (Del. 2001)        4,5,7

*Capano v. State*, 889 A.2d 968 (Del. 2006)        1

*Chapman v. California*, 386 U.S. 18 (1967)        6

*Doyle v. Ohio*, 426 U.S. 610 (1976)        7

*Fry v. Pliler*, __ U.S. __, 127 S.Ct. 2321 (2007)        6

*Gilmore v. Taylor*, 508 U.S. 333 (1993)        1

*Hassine v. Zimmerman*, 160 F.3d 941, 948-949 (3d Cir. 1998)        7

*Henry v. State*, 805 A.2d 860 (Del. 2002)        1

*Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999)        3

*In re Winship*, 397 U.S. 358 (1970)        4

*Schad v. Arizona*, 501 U.S. 624 (1991)        1,2

*Teague v. Lane*, 489 U.S. 288 (1989)        3

*United States v. Lopez*, 340 F.3d 169 (3d Cir. 2003)        6

*Vujosevic v. Rafferty*, 844 F.2d 1023 (3d Cir. 1988)        1,2

**STATUTES**

11 *Del.C.* §231(b)(1)        4

11 *Del.C.* §636(a)(1)        4

# ARGUMENT

## I. THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT, AS ESTABLISHED IN *BECK v. ALABAMA*, 447 U.S. 625 (1980), WHEN IT REFUSED THE DEFENSE'S REQUEST TO INSTRUCT THE JURY ON LESSER INCLUDED OFFENSES TO THE INDICTED CHARGE OF FIRST DEGREE MURDER

In its Brief, the State argues that Capano's claim under *Beck v. Alabama*, 447 U.S. 625 (1980),[1] should be rejected. Proceeding from the proposition that the Supreme Court has not recognized a federal constitutional right to instructions on lesser-included offenses in non-capital cases,[2] the State argues that *Beck* is inapplicable because Capano's death sentence was ultimately vacated in the state post-conviction proceedings[3] and Capano was subsequently sentenced to life imprisonment without possibility of parole. See, State's Brief, DI 38, pp. 13-14.

While noting that other Circuits have declined to apply *Beck* in non-capital cases, the State failed to acknowledge that the Third Circuit has applied *Beck* in non-capital cases. See, *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir. 1988).[4] The rationale for applying *Beck* in non-capital cases, as well as capital cases, stems from the concern that presenting the jury with an "all or nothing" choice distorted the fact finding process leading to a conviction, whether or not a death sentence might subsequently be imposed. That concern was explained by the Supreme Court in *Schad v. Arizona*, 501 U.S. 624, 646-647 (1991):

> Our fundamental concern in in *Beck* was that a jury convinced that the defendant had committed **some** violent crime, but not convinced that he was guilty of a capital crime, might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all.

---

[1] See, Petitioner's Opening Brief, DI 26, at pp. 14-30.

[2] See, *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) (suggesting, but not holding, that *Beck* is limited to capital cases).

[3] See, *Capano v. State*, 889 A.2d 968 (Del. 2006).

[4] The State also failed to acknowledge that the Delaware Supreme Court has held *Beck* applicable in a non-capital case. See, *Henry v. State*, 805 A.2d 860, 864 (Del. 2002).

* * * *

> [In *Beck*], we repeatedly stressed the all-or-nothing nature of the decision with which the jury was presented (citations omitted). As we later explained in *Spaziano v. Florida*, 468 U.S. 447, 455, 82 L. Ed. 2d 340, 104 S. Ct. 3154 (1984), "the absence of a lesser included offense instruction increases the risk that the jury will convict . . . simply to avoid setting the defendant free. . . .The goal of the *Beck* rule, in other words, is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence."

Thus viewed, the real concern in *Beck* was that a defendant, especially a defendant facing a possible death sentence, should receive the "full benefit of the reasonable doubt standard" by providing the jury with a third option of convicting the defendant of a lesser included offense. See, *Beck*, 447 U.S. at 634. This fundamental concern in *Beck* was echoed by the Third Circuit in *Yujosivic*:

> In capital cases, a court must give a requested instruction on lesser included offenses where it is supported by the evidence. *Beck v. Alabama*, 447 U.S. 625(1980). **This court applies that requirement to non-capital cases as well**. *Bishop v. Mazurkiewicz*, 634 F.2d 724 (3d Cir. 1980), *cert. denied*, 452 U.S. 917, 69 L. Ed. 2d 421, 101 S. Ct. 3053 (1981). This requirement is based on the risk that a defendant might otherwise be convicted of a crime more serious than that which the jury believes he committed simply because the jury wishes to avoid setting him free.

*Id.*, 844 F.2d at 1027 (emphasis added).

Even if the Court were to conclude that *Beck* applies only in capital cases, the State's attempt to characterize this case as a non-capital case simply because Capano's death sentence was subsequently vacated is specious at best. This was a capital case when the jury was presented with the "all or nothing" choice either to convict Capano of intentional murder, or set him free by a verdict of "not guilty." As noted above, the State's reasoning is in direct conflict with *Beck's* rationale – the fear that depriving jurors of a "third option" would result in defendants being denied the full benefit of the reasonable doubt standard at the guilt phase:

> This emphasis on the reliability of the conviction decision, as opposed to the sentencing consequences, continues in the Supreme Court cases following *Beck*. In *Hopper*, the Court noted that "our holding [in *Beck*] was that the jury must be permitted to consider a

> verdict of guilt of a noncapital offense 'in every case' in which 'the evidence would have supported such a verdict.'" 456 U.S. at 610. The Court further clarified that because lesser included instructions were required by due process "only when the evidence warrants such an instruction, the jury's discretion is . . . channelled so that it may convict a defendant of any crime fairly supported by the evidence." *Id.* at 611 (first emphasis in original, second added); S*paziano*, 468 U.S. at 455 ("The absence of a lesser included offense instruction increases the risk that the jury will convict, not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free."); *Schad*, 501 U.S. at 646 ("Our fundamental concern in Beck was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all." (emphasis added)).

*Hooks v. Ward*, 184 F.3d 1206, 1228 (10th Cir. 1999).

In *Hooks*, the court concluded that *Beck* was applicable even though the jury retained discretion to impose a sentence other that a death sentence. *Id*, at 1227. If the possibility that a death sentence will not be imposed is not a factor in determining whether *Beck* is applicable, then why should it matter that Capano's death sentence, which was actually imposed by the trial judge and affirmed on direct appeal, was subsequently vacated?

The State also claims that Capano's assertion of a claim under *Beck*, in what the State contends is a non-capital case, would be a "new rule" that would be foreclosed under *Teague v. Lane*, 489 U.S. 288 (1989). See, State's Brief, pp. 11-14. The State's argument here is a true "red herring" and should be rejected. The State's *Teague* argument rests entirely on the assumption that this case is not a capital case and that Capano is advocating for a "new rule" that *Beck* is applicable in non-capital cases. The State's argument is a "red herring" because, as noted above, the assumptions on which it is based are legally incorrect.

When the State finally turns to the merits of Capano's *Beck* claim, the State's argument is that the claim should be rejected because the Delaware Supreme Court's decision was not an

"unreasonable application" of *Beck*. See, State's Brief, pp. 15-18. While this issue is thoroughly developed in Petitioner's Opening Brief,[5] some additional comments are warranted.

In order to convict for "intentional" murder, the State is required to prove that it was the defendant's "conscious object" to kill.[6] In this case, the State charged Capano with the "intentional" killing of Anne Marie Fahey even though the State conceded at trial that it did not know and could not prove the means or manner of her death. (A-173). Notwithstanding this evidentiary void, the trial court rejected the defendant's argument that *Beck* required that the jury be instructed on lesser included offenses. (A-172). The trial court's ruling was affirmed in the direct appeal:

> The possibility that Capano killed Fahey by an act that was reckless, criminally negligent, or under the influence of extreme emotional disturbance is based entirely on speculation. Although there is evidence of the disposal of Fahey's body, the parties concede that apart from the accident defense offered in Capano's testimony, there is no evidence concerning the *manner* of Fahey's death. Her body was not recovered and neither was any murder weapon. Putting aside Capano's accident defense, no one gave eyewitness testimony bearing on the circumstances under which Fahey died (footnote omitted). If the State's planning evidence and Capano's accident defense are rejected, it is *possible* that Capano killed Fahey in some kind of jealous rage, or some other reckless or negligent act. But these possibilities are only speculative. They are not supported by any rational basis in the evidence.

*Capano v. State*, 781 A.2d 556, 631 (Del. 2001) (*"Capano II"*).

As already noted herein, the above rationale – that allowing the jury to consider lesser included offenses would require the jury to "speculate concerning the manner of Fahey's death," – is in direct conflict with *Beck*:

> [W]hen the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense – but leaves some doubt with respect to an element that would justify conviction of a capital offense – the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the

---

[5] See, DI 26, pp. 16-30.

[6] See, 11 *Del.C.* §231(b)(1); *Duonnolo v. State*, 397 A.2d 126, 129 (Del. 1978). Under Delaware law, the State bears the burden of proof as to the defendant's state of mind. See, 11 *Del.C.* §232.

> risk of an unwarranted conviction. Such a risk cannot be tolerated in
> a case in which the defendant's life is at stake.[7]

Without the benefit of any evidence concerning the manner or circumstances of Fahey's death, did the conclusion that her death resulted from an intentional act require the jury to engage in any more or less speculation than the conclusion that her death was the result of a reckless act? Furthermore, the evidence presented at trial made this a paradigmatic *Beck* scenario. In the trial, the jury heard the defendant confirm the essential details of Gerry Capano's chilling account[8] of the disposal of Fahey's body in the Atlantic Ocean. See, *Capano II*, 781 A.2d at 585-586. Based on that admission alone, is it possible, or even conceivable, that any rational juror would not vote to convict for intentional murder, even if that juror had a reasonable doubt as to Capano's state of mind, if the only alternative available was to acquit and set Capano free? That is precisely why *Beck* was applicable in this case.

---

[7] *Id.*, 447 U.S. at 637.

[8] See, A101-A102.

## II. THE ADMISSION OF FAHEY'S HEARSAY STATEMENTS TO HER PSYCHOTHERAPISTS AND HER FRIENDS VIOLATED CAPANO'S RIGHTS UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION

In its Brief, the State focuses on the argument that Capano is not entitled to habeas relief on his Confrontation Clause claims because he cannot establish that the constitutional errors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). (State's Brief, pp. 24-25).[9] Even though *Fry* was decided after Petitioner's Opening Brief was filed, the discussion of "prejudice" in the Opening Brief was cast in terms of whether the Confrontation Clause errors contributed to the guilty verdict, citing *United States v. Lopez*, 340 F.3d 169 (3d Cir. 2003). See, Opening Brief, pp. 50-54. In *Lopez*, the court of appeals applied what amounted to the *Brecht* standard to reverse the defendant's conviction:

> Having concluded that the District Court erred in overruling defense counsel's hearsay objection, we now inquire whether that error nevertheless was harmless. "The inquiry cannot be merely whether," notwithstanding the error, "there was enough to support the [conviction]." *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 283, 12 V.I. 620 (3d Cir. 1976) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 90 L. Ed. 1557, 66 S. Ct. 1239 (1946)). Rather, "if one cannot say . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Id.* See also *Sallins*, 993 F.2d at 348 ("An evidentiary error is harmless only if it is highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction.").[10]

No doubt stymied by *Lopez*, the State does not even mention *Lopez* in its Brief, or attempt to rebut the argument in the Opening Brief that Fahey's inadmissible out-of-court statements provided the "cement" that held together the State's case for intentional murder.

---

[9] Capano agrees with the State that the court should apply the *Brecht* standard rather than the "harmless error" formulation set forth in *Chapman v. California*, 386 U.S. 18 (1967). See, *Fry v. Pliler*, __ U.S. __, 127 S.Ct. 2321, 2325 (2007).

[10] *Id.*, 340 F.3d at 177.

## III. THE PROSECUTION'S CROSS-EXAMINATION OF CAPANO CONCERNING POST-ARREST SILENCE VIOLATED HIS RIGHTS UNDER THE FIFTH AMENDMENT AND DEPRIVED HIM OF A FUNDAMENTALLY FAIR TRIAL

In the direct appeal, Capano claimed that questions by the State during cross-examination concerning his silence at his bail hearing violated his due process rights. See, *Capano II*, 781 A.2d at 647. The Delaware Supreme Court noted that the questions were not objected to at trial and held that that the issue would be reviewed under the "plain error" standard. The court then concluded that "the complained of questions were proper." *Id.* In its Answer (DI 12), the State pointed to the fact that the defense did not object to the cross-examination at trial and argued that the claim was therefore procedurally defaulted in the state court, which precluded habeas review. (State's Answer, DI 12, p. 25). The State's procedural default argument is reiterated in its Answering Brief. (State's Brief, pp.28-31). The Petitioner's arguments concerning the procedural default issue are set forth in the Opening Brief, at pp. 55-57, and need not be repeated here.

Turning to the merits of the issue, in the Opening Brief, Capano argued that the cross-examination of Capano concerning his "silence" at the pre-trial bail hearing was a virtual carbon copy of what happened in *Hassine v. Zimmerman*, 160 F.3d 941, 948-949 (3d Cir. 1998), where the court found that the prosecutor's cross-examination of the defendant concerning his post-arrest silence violated *Doyle*.[11] See, Opening Brief, pp.61-62. This argument is not even addressed, let alone refuted, in the State's Brief.

---

[11] *Doyle v. Ohio*, 426 U.S. 610 (1976).

## Conclusion

For the reasons set forth herein and in Petitioner's Opening Brief, the Court should conclude that Petitioner is entitled to habeas relief. The Court should vacate the Petitioner's conviction and direct that the State of Delaware either grant the Petitioner a new trial or release the Petitioner from custody.

                                            */s/ Joseph M. Bernstein*
                                            JOSEPH M. BERNSTEIN (#780)
                                            800 N. King Street - Suite 302
                                            Wilmington, DE 19801
                                            302-656-9850
                                            302-656-9836 (Fax)
                                            E-mail: jmbern001@comcast.net
                                            Attorney for Petitioner

Dated: September 14, 2007

# CERTIFICATE OF SERVICE

      I hereby certify that on September 14, 2007, I electronically filed the foregoing Petitioner's Opening Brief in Support of Petition for Habeas Corpus with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

      Loren C. Meyers, Esquire
      Elizabeth R. McFarlan, Esquire
      Department of Justice
      820 N. French Street
      Wilmington, DE 19801

      */s/ Joseph M. Bernstein*
      JOSEPH M. BERNSTEIN (Bar #780)
      800 N. King Street - Suite 302
      Wilmington, DE 19801
      302-656-9850
      E-mail: jmbernstein@embarqmail.com