# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS J. CAPANO,<br>   Petitioner, | :<br>:<br>: |
| v. | : Civil Action No. 06-58 SLR |
| THOMAS CARROLL, Warden, *et al.,*<br>   Respondent. | :<br>:<br>: |

## MOTION TO RECUSE ASSIGNED JUDGE

The Petitioner, Thomas J. Capano ("Capano") hereby moves the Court to recuse itself from participation in any further proceedings in the above case. The factual basis and legal arguments asserted in support of this Motion are set forth below as follows:

### Factual Background

In January 1999, Capano was convicted in state court of First Degree Murder and sentenced to death arising from the death of Anne Marie Fahey ("Fahey"). See, *State v. Capano*, 1999 Del. Super. LEXIS 541, *1 (Del. Super. 1999) ("*Capano I*"). On August 10, 2001, Capano's conviction and death sentence were affirmed on direct appeal by the Supreme Court of Delaware. *Capano v. State*, 781 A.2d 556 (Del. 2001) ("*Capano II*"). On June 3, 2003, Capano filed a Motion for Post-Conviction Relief in the Delaware Superior Court under Superior Court Criminal Rule 61 (hereinafter "Rule 61 Motion"). The proceedings on the Rule 61 Motion eventually resulted in Capano's death sentence being vacated and the case remanded to Superior Court for a new penalty hearing. In all other respects, however Capano's conviction for First Degree Murder was upheld. See, *Capano v. State*, 889 A.2d 968, 968-969 (Del. 2006) ("*Capano III*").[1]

In July 1996, prior to the initiation of the state murder charge against Capano, the Federal Bureau of Investigation ("FBI") and a federal Grand Jury in Delaware began a kidnaping investigation into Fahey's disappearance. On August 5, 1996, Capano was formally notified that he

---

[1] After the case was remanded to the Superior Court for a new penalty hearing, the State elected not to proceed with a new penalty hearing. Capano was thereafter re-sentenced to life imprisonment in accordance with 11 *Del.C.* §4209. (State's Brief, p.1) (DI 38).

was a "target" of that investigation. See, *State v. Capano*, 1998 Del. Super. LEXIS 377, *2-*5. The presiding judge in the federal grand jury proceedings was the Honorable Sue L. Robinson.

On January 30, 2006, Capano filed this pending Petition for Habeas Corpus relief under 28 U.S.C. §2254, challenging his 1999 conviction for first degree murder in the Delaware Superior Court. The case was originally assigned to the Honorable Kent A. Jordan. (D.I. 2). On December 15, 2006, the case was designated to be assigned to the judge who fills the vacancy left by the elevation of Judge Kent A. Jordan to the Third Circuit Court of Appeals. (D.I. 21).

On June 7, 2007, Capano filed a Motion which requested the Court to assign a judge to the case. (DI 32). On September 19, 2007, the case was assigned to Judge Sue L. Robinson. Briefing on the Habeas Petition is now completed and the case is ripe for decision by the Court.

**Argument**

The Due Process Clause of the Fourteenth Amendment incorporates a litigant's Fifth Amendment right to have a "neutral and detached judge" preside over judicial proceedings. *Ward v. Village of Monroe*, 409 U.S. 57, 58-59 (1972). This fundamental rule was explained in *In re Murchison*, 349 U.S. 133, 136 (1955):

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias. But our system of law has always endeavored to prevent even the probability of unfairness ... such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, "justice must satisfy the appearance of justice."

The test for recusal based on an "appearance of impropriety" standard was established by the United States Supreme Court in *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847 (1988). In *Liljeberg*, the Supreme Court examined the appearance of partiality standard in construing the provisions of *28 U.S.C.* §455, which requires disqualification of a judge "in any proceeding in which his impartiality might reasonably be questioned." 28 *U.S.C.* §455(a).[2] The Court held that a

---

[2] The very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible. See S. Rep. No. 93-419, at 5; H. R. Rep. No. 93-1453, at 5.

violation of §455(a) "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Id*. 486 U.S. at 860. Also see, *Liteky v. United States*, 510 U.S. 540, 548 (1994) (issues relating to recusal under 28 U.S.C. §455(a) are to be "evaluated on an **objective** basis, so that what matters is not the reality of bias or prejudice, but its appearance") (emphasis in original); *United States v. Antar,* 53 F.3d 568, 576 (3d Cir.1995) ("But in determining whether a judge had the duty to disqualify him or herself, our focus must be on the reaction of the reasonable observer. If there is an appearance of partiality, that ends the matter."). Thus in determining whether a reasonable observer would believe that there existed an appearance of partiality, "it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [Judge Robinson's] impartiality." *Liljeberg,* 486 U.S. at 864-865.

This case is analogous to the scenario presented in *Murchison* itself. *Murchison* was an "appearance of bias" case, where the state statutory scheme allowed a state judge to sit as a one-man grand jury, who had the power to compel witnesses to testify before him in secret, and then to try, convict and sentence defendants. *Murchison*, 349 U.S. at 135. See, *Johnson v. Carroll*, 369 F.3d 253, 260 (3d Cir, 2004) (The holding in *Murchison* "is confined to the basic constitutional principle of prohibiting a judge from adjudicating a case where he was also an investigator for the government"). In this case, apart from the fact that Judge Robinson presided over the investigative federal grand jury, because of the secrecy of such grand jury proceedings,[3] there is no means for Petitioner, or anyone else for that matter, to learn the substance of evidentiary or other matters to which the Judge was exposed to, or whether such exposure would actually influence her rulings in this case. However, under *Murchison*, Petitioner does not have to prove actual bias. Recusal is warranted if a reasonable outside observer would believe that her impartiality might be questioned because of her role in the investigative grand jury. Under such facts, *Murchison* and its progeny

---

[3] The secrecy of grand jury proceedings is long-established policy. *United States v. Procter & Gamble, Co.*, 356 U.S. 677, 681 (1958); *United States v. Rose*, 215 F.2d 617, 628 (3d Cir. 1954) ("Grand Jury proceedings are traditionally secret.")

would appear to dictate that Judge Robinson should recuse herself from further proceedings in this case.

**Local Rule 7.1.1 Certification**

The undersigned hereby certifies that he has contacted Elizabeth R. McFarlan, Esquire, counsel for the respondents, who stated that the State opposes the relief sought in this Motion.

 /s/ *Joseph M. Bernstein*
JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
Jmbernstein@embarqmail.com
Attorney for Petitioner

Dated: October 17, 2007